## A97A0356. THE STATE v. VINES.
(487 SE2d 521)

ANDREWS, Chief Judge.

Donnie E. Vines was indicted for the offense of child molestation. Vines filed a general demurrer to the indictment contending the allegation that he engaged in a sexually explicit telephone conversation with a child with the intent to arouse and satisfy his sexual desires was insufficient to allege the offense of child molestation as set forth in OCGA § 16-6-4 (a). The trial court sustained the demurrer and dismissed the indictment. The State appeals pursuant to OCGA § 5-7-1 (a) (1).

The indictment charged that Vines committed the offense of child molestation by "perform[ing] an immoral and indecent act to [L. N.], a child under the age of sixteen (16) years, with intent to arouse and satisfy the sexual desires of said accused by calling said child on the telephone and engaging in conversation about sexual acts that included fondling of private parts, intercourse and oral sodomy. . . ." The offense of child molestation is defined in OCGA § 16-6-4 (a) as follows: "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."

Vines contends that the offense of child molestation cannot be committed by means of a telephone conversation. Specifically, he contends that, under the child molestation statute, the offense must be committed in the physical presence of the child and that speech alone, unaccompanied by other action, is insufficient to satisfy the statutory requirement that the accused perform an immoral or indecent "act."

Addressing the "act" requirement first, we find no merit in Vines' contention that the indictment failed to allege that he committed an immoral or indecent "act" as contemplated by OCGA § 16-6-4 (a). Vines argues that, since the indictment merely alleges he spoke to the child and fails to allege other action taken by him, he committed no "act" as defined by the statute. Under OCGA § 16-2-1, "[a] 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence." A statute may or may not use the word "act" in defining a particular offense. In those that do use it, the word "act" is used to refer to various types of physical movement and speech. In some statutes "act" may be limited to a particular kind of physical movement. For example, a person commits the offense of prostitution by performing "an act of sexual intercourse for money." OCGA § 16-6-9. Other statutes use the word "act" to refer to both acts of speech and other physical movements. For example, "[a] person commits the offense of pimping

when he performs any of the following acts: (1) Offers or agrees to procure a prostitute for another; . . . or (4) Receives money or other thing of value from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution." OCGA § 16-6-11. Thus, depending on the statute at issue, "an act sufficient for criminal liability may consist of nothing more than the movement of the tongue so as to form spoken words." 1 LaFave & Scott, Substantive Criminal Law, § 3.2 (b) (1986).

The statute defining the offense of child molestation refers generally to the commission of an "immoral or indecent act" without reference to any particular physical movement or speech and without any other specific limitation on the type of act. It does not, for example, require that the act involve physical contact with the child which is necessary for the commission of the offense of sexual battery as set forth in OCGA § 16-6-22.1. Although the majority of child molestation convictions have involved some form of physical contact between the molester and the victim, we have affirmed convictions involving speech and other actions in which there was no physical contact. *Smith v. State*, 178 Ga. App. 300, 301 (342 SE2d 769) (1986) (in one count of the indictment, the accused showed and described the use of a condom to the child and the child observed him having an erection, and, in another count, the accused observed the child use a mechanical vibrator on her genital area); *Thompson v. State*, 187 Ga. App. 563 (370 SE2d 819) (1988) (accused required child to dance naked in front of him); *Blanton v. State*, 191 Ga. App. 454 (382 SE2d 133) (1989) (accused exposed himself to child and asked child to get into a car with him). In so doing, we have held that the child molestation statute "proscribes acts which offend against [the public's] sense of propriety as well as affording protection to a child's body in those cases where the act or acts are more suggestive of sexually oriented misconduct than simply assaultive in nature. A child's mind may be victimized by molestation as well." *Smith*, supra at 301; *Thompson*, supra. The child molestation statute (OCGA § 16-6-4) and the statutes prohibiting statutory rape (OCGA § 16-6-3) and enticement of children for indecent purposes (OCGA § 16-6-5) were enacted as part of a general legislative scheme to protect children under the age of 16 from physical and psychological damage resulting from sexual exploitation. *Roe v. State Farm Fire &c. Co.*, 188 Ga. App. 368, 369 (373 SE2d 23) (1988); *Coker v. State*, 164 Ga. App. 493, 494 (297 SE2d 68) (1982); *Barnes v. State*, 244 Ga. 302, 305 (260 SE2d 40) (1979).

In construing whether the conversation alleged in the indictment is a type of "immoral or indecent act" prohibited by OCGA § 16-6-4 (a), we consider the above-stated purpose of the statute as a whole. *D. G. D. v. State of Ga.*, 142 Ga. App. 266, 267 (235 SE2d 673)

(1977). With that purpose in mind, we have no doubt the indictment alleging that Vines initiated a conversation with the child about sexual acts including fondling of private parts, intercourse and oral sodomy with the intent to arouse and satisfy his sexual desires alleges an immoral or indecent act which the child molestation statute was enacted to prohibit. The sexually exploitative nature of the alleged act is not altered by the fact that it involved speech unaccompanied by other acts. Accordingly, the allegation of the conversation alone, without any further allegation of physical contact with the child or other conduct by Vines, was sufficient to satisfy the statutory requirement in OCGA § 16-6-4 (a) that the accused committed an "immoral or indecent act."

Likewise, we find no merit to the contention that OCGA § 16-6-4 (a) does not prohibit an immoral or indecent act committed by an accused in a telephone conversation with a child. The statute prohibits "any immoral or indecent act to or in the presence of or with any child under the age of 16 years. . . ." Although the language of the statute obviously applies to acts committed in the physical presence of the child, it does not require such physical presence, and the language is clearly broad enough to apply to an act committed by communication in a telephone conversation between the accused and the child.

The mere fact that the alleged conversation was communicated by telephone rather than in the physical presence of the child does not change the sexually exploitative and psychologically damaging nature of the act and thus does not remove it from the scope of acts prohibited by OCGA § 16-6-4 (a). See *Usher v. State*, 143 Ga. App. 843, 844 (240 SE2d 214) (1977) (rejected the defendant's contention that a terroristic threat communicated by telephone was not prohibited by OCGA § 16-11-37). A similar conclusion was reached in *People v. Imler*, 11 Cal. Rptr. 2d 915 (Cal. App. 2 Dist. 1992), a California case involving attempted child molestation by telephone. In California, touching of the child, either by the accused or by the child himself at the instigation of the accused, is a necessary element of the offense of child molestation which is defined as committing any "lewd or lascivious act . . . upon or with the body . . . of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the accused] or the child. . . ." Cal. Penal Code, § 288; id. Imler called the child on the telephone, falsely told the child he was holding his father hostage, and repeatedly told the child to disrobe and touch his penis. The child did not comply and eventually hung up. Although Imler was not charged with committing child molestation under the California statute, the court affirmed his conviction for attempting to molest the child by speaking to the child over the telephone and held that

Imler's physical presence with the child was not required. Id.

Lastly, we find no merit to Vines' contention that the legislature did not intend to proscribe the alleged telephone conversation under the child molestation provisions of OCGA § 16-6-4 (a) because such telephone conversations are specifically prohibited by the disorderly conduct provisions of OCGA § 16-11-39 (a) (4). Under the latter statutory provision, "[a] person commits the offense of disorderly conduct when such person[,] . . . [w]ithout provocation, uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace." "The proscription of [OCGA § 16-11-39 (a) (4), formerly OCGA § 16-11-39 (2)] rests upon the apparent legislative determination that, given the 'facts and circumstances' of an unprovoked employment of a certain type of language within the hearing of certain young listeners, there is potential for an immediate breach of the peace." *Crolley v. State*, 182 Ga. App. 2, 3 (354 SE2d 864) (1987). Thus, this provision of the disorderly conduct statute was intended to protect against the anger and violent response the use of such language within the hearing of children may tend to provoke. The child molestation statute, which was enacted to protect children from physical and psychological damage resulting from sexual exploitation, has a different purpose and different elements of proof.

The trial court erred in sustaining the demurrer and dismissing the indictment.

*Judgment reversed. McMurray, P. J., and Birdsong, P. J., concur. Beasley, Ruffin and Eldridge, JJ., concur specially. Smith, J., dissents.*

BEASLEY, Judge, concurring specially.

In addition to the analysis conveyed in the majority opinion, there is the point that the common meaning of "molestation" clearly includes the behavior of which defendant Vines is accused in this case. According to Webster's Third International Dictionary, "molestation" means "a cause or state of harassment: vexation; an act or instance of molesting: annoyance, obstruction; wilful injury inflicted upon another by interference with his use of rights as to person, character, social position, or property."

Although the statutory caption of the crime described in OCGA § 16-6-4, "Child molestation," is not a part of the law, OCGA § 1-1-7, the offense is so named in the body of the statute itself. The meaning ascribed by the statute expressly does not require that the perpetrator and the victim be in each other's physical presence; "in the presence of" is only one of three alternatives. On this point the statute is in accord with the dictionary meaning.

Thus the statute, as applied in this case, does not run afoul of

the principle that "a penal statute must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." (Citations and punctuation omitted.) *Chancey v. State*, 256 Ga. 415, 428 (4) (D) (349 SE2d 717) (1986). See also *Johnson v. State*, 264 Ga. 590, 591 (1) (449 SE2d 94) (1994); *State v. Burch*, 264 Ga. 231 (443 SE2d 483) (1994). Applying the test repeated and applied in *Chancey*, people of "common intelligence" are not left to "guess at the meaning of [the] statute" in order to know whether or not the behavior Vines allegedly engaged in constitutes a violation of it. Id. It also meets the "common understanding" test used as a measurement in *Connally v. State*, 265 Ga. 563, 564 (3) (458 SE2d 336) (1995), and *Simmons v. State*, 262 Ga. 674 (424 SE2d 274) (1993).

RUFFIN, Judge, concurring specially.

I agree with the majority that the trial court erroneously dismissed the indictment in this case. It is clear that the child molestation statute was intended to protect children against the conduct alleged in the indictment. I write separately to address the dissent's conclusion "that the legislature intended to treat obscene telephone calls, whether to minors or others, as misdemeanor offenses separate from the felony of child molestation."

I agree with the dissent that obscene telephone calls to minors are governed by OCGA § 46-5-21. I do not believe, however, that a proscription against "obscene telephone calls" protects minors from the same type of harm as is proscribed by the child molestation statute. I also agree with the dissent that this issue is properly resolved by application of the rules of statutory construction. I believe, however, that the dissent has overlooked a critical distinction between the child molestation statute (OCGA § 16-6-4) and the statutes merely prohibiting the use of obscene language via telephone (OCGA §§ 16-11-39; 46-5-21).

The rules of statutory construction that are applicable in this case may be stated as follows: (1) determine the legislative intent giving meaning to the old law, the evil, and the remedy; (2) apply the ordinary signification to all words; (3) give meaning to each part of a statute and avoid constructions which render any portion mere surplusage; and (4) as stated by the dissent, statutes "in pari materia" are construed together. OCGA § 1-3-1; *City of Buchanan v. Pope*, 222 Ga. App. 716 (1) (476 SE2d 53) (1996). Upon application of these four rules, I conclude that child molestation is an offense that can be committed via the telephone, and that such construction does not render meaningless the prohibitions against using obscene language over the telephone as that conduct is prohibited under OCGA §§ 46-5-21 (a) (1) and 16-11-39 (a) (4).

OCGA § 46-5-21 (a) (1) proscribes using a telephone to "[m]ake any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, or indecent." OCGA § 16-11-39 (a) (4) similarly proscribes using such language "in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace." Importantly, both statutes define the offenses as general intent crimes which merely prohibit the use of obscene or indecent language within the ambit of the respective statute. The Supreme Court of Georgia has observed " 'that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' " *Breaux v. State*, 230 Ga. 506, 507-508 (1) (197 SE2d 695) (1973). In another context, this Court has described such language as "personally obnoxious." *Coleman v. Housing Auth. of Americus*, 191 Ga. App. 166, 169 (1) (381 SE2d 303) (1989). Our legislature has therefore criminalized in certain forums the use of such language, which under the terms of both statutes governs a broad spectrum of obnoxious and socially unacceptable speech. And, in order to discourage its use and protect the public from such conduct, the legislature has provided for misdemeanor sentencing. See OCGA §§ 46-5-21 (a); 16-11-39 (b).

Child molestation, in comparison, is a specific intent crime involving conduct of a far more serious nature. OCGA § 16-6-4 (a) does not merely criminalize immoral or indecent language when addressed or directed to a child under the age of 16 years. Rather, that statute includes the requirement that the perpetrator have the specific "intent to arouse or satisfy the sexual desires of either the child or the [perpetrator]." Id. Even if we assume, as the dissent finds, that there is no difference in the speech prohibited by the three statutes, under the child molestation statute, the phrase "any immoral or indecent act" must be read in conjunction with the specific intent requirement. See *McCord v. State*, 248 Ga. 765 (285 SE2d 724) (1982). It is only where the two requirements are construed together that the true harm of such conduct is realized.

We have observed that a "sexual offense committed against a young child requires a special lascivious motivation or bent of mind. . . . That is, it requires a unique bent of mind for an accused to desire to satisfy the sexual desires of a young child or his own sexual desires through the medium of using a young child's body in *some form*." (Emphasis supplied.) *Adams v. State*, 208 Ga. App. 29, 32 (2) (b) (430 SE2d 35) (1993). "The virulent inclination is *the use of a young child as a sexual object*. . . ." (Emphasis in original.) Id. It is the specific intent to sexually exploit a young child's body in "some form" that makes the immoral or indecent "act" particularly harmful.

As the majority observes, the harm from such exploitation can be psychological as well as physical. See *Thompson v. State*, 187 Ga. App. 563, 564 (2) (370 SE2d 819) (1988) ("[a] child's mind may be victimized by molestation as well [as a child's body]"). The child victim of what may crudely be described as "phone sex," although not physically harmed by such acts, certainly may suffer psychological harm. Accordingly, it is not necessary that the perpetrator be in close physical proximity to the victim to commit the offense and cause the harm. Rather, psychological harm can result whenever an individual commits an immoral or indecent act with the specific intent to sexually exploit the child victim. That is the evil, and the legislature enacted OCGA § 16-6-4 to protect child victims from that evil. See id. Furthermore, it is this evil, the specific and intentional use of a child as a sex object, and the harm that such conduct has on a child, that justifies the felony sentence.

The critical difference between the statutes which merely prohibit the use of obscene language and the child molestation statute is that the obscene language statutes do not protect children against psychological damage resulting from sexual exploitation. Although in some cases the same language may be described as immoral, indecent, obscene, vulgar, or profane, it is the specific intent of the perpetrator to use the child as an object of sex that makes it particularly damaging to the child victim. The legislature did not intend for OCGA §§ 46-5-21 and 16-11-39 to protect against such sexual exploitation. Neither are the misdemeanor sanctions imposed under those statutes sufficient to: (1) deter individuals from such sexual exploitation, and (2) punish those guilty of such acts.

Finally, I disagree with the dissent that the majority's construction of the child molestation statute creates a substantial risk that the perpetrator will be unable to determine when the same conduct on his part renders him liable for child molestation instead of disturbing the peace or making obscene telephone calls. Knowledge of the victim's age is not an element of child molestation, and it is no defense that the defendant did not know the victim's age. See *Tant v. State*, 158 Ga. App. 624 (281 SE2d 357) (1981). Furthermore, the perpetrator knows, better than others, what his or her intent is in using the proscribed language, and it is for the factfinder to determine whether the defendant acted with the requisite intent. See *Constantino v. State*, 243 Ga. 595, 598 (1) (255 SE2d 710) (1979); *Blanton v. State*, 191 Ga. App. 454 (1) (382 SE2d 133) (1989).

I thus conclude, as does the majority, that the trial court erroneously sustained the demurrer and dismissed the indictment.

I am authorized to state that Judge Eldridge joins in this special concurrence.

SMITH, Judge, dissenting.

I respectfully dissent. In my opinion, the trial court correctly interpreted the child molestation statute as intended by the legislature. The majority, in contrast, has not only rewritten that statute but has called into question the scope and effect of the statutes dealing with obscene telephone communications, disorderly conduct, and criminal attempt. It has also rendered the child molestation statute impermissibly vague.

"A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a). No previous decision in Georgia has construed this to include an act committed via telephone, because no Georgia court has included in the definition of "any immoral or indecent act" a verbal act made outside the immediate presence of the child.

It also does not appear that the legislature intended this result. In considering legislative enactments, we must apply the principal rules of statutory construction. These rules include the requirement that we "give meaning to each part of the statute and . . . avoid constructions which render a portion of the statute mere surplusage. A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. Finally, it is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." (Citations and punctuation omitted.) *City of Buchanan v. Pope*, 222 Ga. App. 716 (476 SE2d 53) (1996).

Applying these rules, it is apparent that the legislature did not intend to include obscene telephone calls to minors within the ambit of the child molestation statute. Doing so would create conflict with two statutes proscribing the same or similar conduct: OCGA § 46-5-21 (a), obscene, threatening, or harassing telephone calls,[1] and OCGA § 16-11-39 (a) (4), disorderly conduct by using "obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace."[2] Bearing in mind the requirement that we not

---

[1] Appellee was charged and bound over under this statute.

[2] The latter statute is inapplicable here because the victim had attained the age of 14 at the time of the offense.

render meaningless any provision of the legislature, and considering also that we are bound to construe criminal statutes strictly, *Flanagan v. State*, 212 Ga. App. 468 (442 SE2d 16) (1994), I conclude that the legislature intended to treat obscene telephone calls, whether to minors or others, as misdemeanor offenses separate from the felony of child molestation.

I do not believe that the offense defined in OCGA § 16-11-39 (a) (4) can be distinguished, as the majority contends, because it addresses a breach of the peace. "Breach of the peace" has been defined as "the breaking or disturbing of the public peace by any riotous, forcible or *unlawful* proceeding. [Cits.]" (Emphasis supplied.) *Sanders v. City of Columbus*, 140 Ga. App. 441, 443-444 (3) (231 SE2d 473) (1976) (jury question whether traffic violation for speeding constituted breach of the peace). The presence of even one other person may convert an act into a breach of the peace. See, e.g., *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110-111 (1) (387 SE2d 144) (1989) (attempted repossession of vehicle in presence of owner constitutes breach of the peace). Assuming, however, that an obscene telephone call made in public can be distinguished from an obscene telephone call made in private as promoting a breach of the peace, as the majority urges, a flagrant and defiant use of the telephone before many witnesses would constitute a mere misdemeanor, while a single private call would become a felony. The legislature could not have intended this anomalous result.

There is, moreover, a rational distinction to be made between obscene telephone calls and child molestation perpetrated by words or actions in the physical presence of the victim. The cases cited by the majority as showing child molestation committed by speech and other non-contact actions simply confirm this reading of the statute, because all without exception were made in the physical presence of the victim.[3] Members of the General Assembly may well have concluded that verbal acts perpetrated from an indeterminate distance over the telephone, while offensive and disturbing, do not pose the same threat to the minor's physical or psychological safety as verbal acts committed in the minor's physical presence.

In citing a California decision affirming a conviction of *attempted* child molestation via telephone, the majority ignores the crucial distinction that the defendant here was not charged with attempt but with the completed crime. Whether this defendant's conduct might have constituted "a substantial step toward the commission of [the] crime," OCGA § 16-4-1, is not before us. I note, however, that the

---

[3] It should also be noted that this defendant was not charged with committing an offense "in the presence of" the victim, but merely "to" the victim.

majority's reading will convert many acts formerly considered attempted child molestation into the completed crime. See, e.g., *Wittschen v. State*, 189 Ga. App. 828 (377 SE2d 681) (1988), aff'd, 259 Ga. 448 (383 SE2d 885) (1989) (appellant who verbally invited a child in his physical presence to perform a lewd act was properly convicted of *attempt* to commit the offense of child molestation).

Finally, imposing liability under OCGA § 16-6-4 for defendants who were never in the physical presence of the victim raises substantial due process and fairness concerns. "In its classic formulation of the standard for establishing unconstitutional vagueness, the Supreme Court held that a penal statute must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. If men of common intelligence must guess at the meaning of a statute, the statute violates due process of law. [Cits.]" (Punctuation omitted.) *Chancey v. State*, 256 Ga. 415, 428 (4) (D) (349 SE2d 717) (1986).

There is no question that an obscene telephone call is offensive, intrusive, and disgusting to the victim regardless of his or her age. It is apparent, however, that extending the scope of the child molestation statute to include telephone calls creates a substantial risk that the perpetrator will be unable to determine when the same conduct on his part renders him liable for the felony of child molestation instead of the misdemeanor of disturbing the peace or an obscene telephone call. Callers who do not know the recipient (as appears to be the case here) or who dial numbers at random would be subject to felony penalties if a person under the age of 16 happens to answer the telephone, or if the caller is unable to determine the age of the recipient from his or her voice. Although knowledge of a victim's age is not an element of the offense, a child molester who claims not to know the *age* of a victim with whom he was in direct personal contact is in a significantly different position from that of a random obscene caller. The telephone caller clearly has the intent to perpetrate a disgusting and obscene intrusion into the life of his victim, but he cannot have a "specific intent to use [a] child as an object of sex," as noted by the special concurrence, when he has no direct personal contact with an unknown victim, who could be of any age. Such a lack of knowledge completely removes the necessary element of intent or "unique bent of mind" required for the offense of child molestation.

Although we view the defendant's conduct here with repugnance, we ought not to allow distaste for his behavior to erode the bedrock principle that all citizens must be given fair notice of the criminality of certain conduct, the scope of a statute, and the penalties imposed for its violation. "We must proceed slowly and carefully in this era of public awareness. We cannot allow our revulsion of sexual abuse or molestation to turn our courts into a forum in which the

accusation becomes the conviction and affirmance." *State v. Butler*, 256 Ga. 448, 454, n. 4 (349 SE2d 684) (1986) (Smith, J., dissenting).

For these reasons, I respectfully dissent.

DECIDED JUNE 11, 1997 — 

 Before Judge McGarity.

*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellant.

*William C. Drosky*, for appellee.